IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JODI McCLAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 3:17-CV-00705 |
| ) | |
| AIRPORT MANAGEMENT SERVICES, ) | Judge Eli J. Richardson |
| LLC, ) | |
| ) | Magistrate Judge Alistair Newbern |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO REDUCE THE GENERAL DAMAGE AWARD
CONSISTANT WITH T.C.A. § 29-39-102**

MAY IT PLEASE THE COURT:

Plaintiff opposes the Defendant's Motion to reduce the jury's general damage verdict from $930,000 to $750,000. The Defendant argues that this reduction is required by the statutory general damages caps provided in T.C.A. § 29-39-102. That statute is unconstitutional and unenforceable. The Defendant's Motion should be denied.

### 1) Jodi McClay's Trial and Damages

This case arises out of an incident that occurred at a retail store in the Nashville International Airport when Ms. McClay entered the store and approached a freestanding refrigerated cooler, grabbed and bottle of water, and as she walked away was struck in the foot by a wood louvre panel that was positioned at the bottom of the cooler for decoration. Ms. McClay was treated on site by first responders and was able to make her return flight to California. Upon returning home Ms. McClay sought medical attention and saw several physicians before being diagnosed with Complex Regional Pain Syndrome for which she continues to undergo treatment by a pain management specialist, Dr. Tara Sheridan. Dr. Sheridan testified that it was her opinion

that Ms. McClay suffers from Complex Regional Pain Syndrome that was caused by the trauma she suffered by the wood louvre panel striking her foot on August 22, 2016. Dr. Sheridan further testified that there is no cure to Complex Regional Pain Syndrome, and that it was her opinion that Ms. McClay will likely suffer pain for the rest of her life and require lifelong medical treatment.

Despite objection of Plaintiff's counsel, the Court provided an itemized jury verdict on damages in which the jury returned a $930,000.00 general damage compensation verdict and a future medical cost verdict of $444,500.00.

The Defendant's motion seeks to reduce the jury's general damage verdict from $930,000.00 to $750,000.00 in light of the general damages cap imposed by T.C.A. § 29-39-102.

**2) The General Damages Cap Violates The Right To Trial By Jury**

The right to trial by jury is "inviolate." Tennessee Constitution, Article 1, § 6, "… one of the most important personal rights found in the Tennessee Declaration of Rights." *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 778 (Tenn. Ct. App. 2010).

The right to trial by jury guaranteed by the Tennessee Constitution, Article 1, § 6, protects that right only as to matters that exist in common law.[1] *See Marler v. Wear*,

---

[1] The jury trial is not merely a procedural feature of our civil justice system. A war was fought, and lives lost, to win this right. The jury was immensely popular among the American colonists. They admired the heroism of Edward Bushel and the other jurors who refused to convict Quacker William Penn in 1670, knowing they would be, and being, fined and jailed for their failure to do so. *See* John Guinther, The jury in America, ch. 1 (1988). A 1688 case, in which a jury acquitted seven Anglican bishops of seditious libel for signing a letter in opposition to James II, elevated the jury in public esteem "as a bulwardk of liberty, as a means of preventing oppression by the Crown." Austin Scott, *Trial by Jury and the Reform of Civil Procedure*, 31 Harv. L. Rev. 669, 676 (1918). Treatises extolling the jury flooded the market and profoundly influenced eighteenth century American as well as English view about jury trial. *Id.*

96 S.W. 447, 117 Tenn. 244 (Tenn. 1906); and *Greene County Union Bank v. Miller*, 75 S.W.2d 49, 18 Tenn. 239 (Tenn. App. Ct. 1934).[2]

At common law, it was the exclusive function of the jury to ascertain damages in a tort action for personal injury. *See e.g.,* 3 Williams Blackstone, COMMENTARIES ON THE LAWS OF ENGLAND (1965) 398, "[W]here damages are to be recovered, a jury must be called to assess them; unless the defendant to save charges will confess the whole damages laid in the declaration."; *Barry v. Edmunds*, 116 U.S. 550, 565, 6 S. Ct. 501, 509, 29 L. Ed. 729 (1886), "[N]othing is better settled than [the principle] that, in…actions for torts, where no precise rule of law fixes the recoverable damages, it is the peculiar function of the jury to determine the amount by their verdict."; *Klotz v. St. Anthony's Med. Ctr.,* 311 S.W.3d 752, 775 (Mo. 2010)(Wolff, J. concurring)(internal citation omitted), *cited with approval, Watts v. Lester E. Cox Med. Centers*, 376 S.W.3d 633, 638 (Mo. 2012), reh'g denied (Sept. 25, 2012), holding caps unconstitutional in violation of right to jury trial, "In a 1615 case, it was declared that 'jurors are chancellors' in the

---

"The struggle over jury rights was, in reality, an important aspect of the fight for American independence and served to help unite the colonies." Stephan Landsman, *The Civil Jury in America: Scenes from an Unappreciated History*, 44 hastings L.J. 579, 596 (1993). *See also* Roscoe Pound, The Development of Constitutional Guarantees of LIerty 69-72 (1957); Carl Ubbelohde, the Vice-Admiralty Courts and the American Revolution 209-11 (1960); Charles W. Wolfram, *The Constitutional History of the Seventh Amendment*, 57 Minn. L. Rev. 639, 654 (1973). Thomas Jefferson maintained: "I consider trial by jury as the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution."

[2] When the Tennessee Constitution was adopted there was no legal basis for the claims against the government as the sovereign was immune. Sovereign immunity was lifted in part to allow claims, but without a jury. The right to trial by jury in Article 1, § 6 remained inviolate since claims against the government never previously existed in common law. Furthermore, the Supreme Court found that workers compensation claims did not violate the right to trial by jury because by accepting employment, a worker voluntarily waived that right. *See Scott v. Nashville Bridge Company*, 223 S.W. 844, 852 (Tenn. 1920). Furthermore, the Supreme Court found that private parties by agreement could waive a right to trial by jury. *Pool v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 780 (Tenn. Ct. App., 2010).

matter of assessing damages, and entitled to use an uncontrolled direction. No one outside of the judicial system interfered."

Among the rights secured by the right to a trial by jury is "the right to have a jury determine the amount of statutory damages, if any, …" *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353, 118 S. Ct. 1279, 1287, 140 L.Ed.2d 438 (1998). The Supreme Court explained:

> "Thus, in Dimick v. Schiedt, 293 U.S. 474 55 S.Ct. 296, 79 L.Ed. 603 (1935), the Court stated that 'the common law rule as it existed at the time of the adoption of the Constitution; was that 'in cases where the amount of damages was uncertain[,] their assessment was a matter so peculiarly within the province of the jury that the Court should not alter it.' Id., at 480, 55 S.Ct. , at 298 (internal quotation marks and citations omitted). And there is overwhelming evidence that the consistent practice at common law was *for juries to award damages*." *Feltner v. Columbia Pictures Television.*, 523 U.S. 340, 353, 118 S. Ct. 1279, 1287, 140 L. Ed. 2d 438 (1998)(emphasis in original).

The Tennessee Appellate Courts have long held that determining damages is the exclusive province of the jury. *Thompson v. French*, 18 Tenn. 452, 459, 1837 WL 1022, at p. 4 (1837), "[damages] was a question peculiarly within the province of the jury . . ."; *Tennessee Coal & R. Co. v. Roddy*, 85 Tenn. 400, 5 S.W.286 (Tenn. 1887), "In actions founded upon torts, the jury are the sole judges of damages . . ."; *Grace v. Curly*, 3 Tenn. App. 1, 10, 1926 WL 2018, at p. 6 (Tenn. Ct. App. 1926), "The assessment of damages is strictly a jury question."; *Pantaze Company, Inc. v. Chism*, 13 Tenn. App. 227, 231, 1930 WL 1760, at p. 4 (Tenn. Ct. App. 1930), "In a case of personal injuries, the question of damages is peculiarly within the province of the jury and it is the duty of the jury to determine the amount of compensatory damages to which the plaintiff is entitled under all of the facts and circumstances of the case."; *Smith v. Shelton*, 569 S.W.2d 421, 427 (Tenn. 1978), "We think it is the exclusive province of the jury to assess damages within the range of reasonableness established by credible proof."

4

While Tennessee law provides for a procedure and legal basis to reduce or add to an award that is either unreasonable or excessive, T.C.A. § 20-10-101, 102, statutory caps such as that provided by T.C.A. § 29-39-102 constitute an absolute remittitur. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 239, 930 N.E.2d 895, 908-909 (Ill. 2010), held that the "legislative remittitur" violated the separations of powers under the Illinois Constitution.

The Supreme Courts in both Missouri and Georgia have recognized the unconstitutional nature of statutory damage caps and held them unconstitutional. *See Watts v. Lester E. Cox Medical Centers*, 376 S.W.3d 633, 638 (Mo. 2012) and *Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt*, 286 Ga. 731, 738, 691 S.E.2d 218, 224 (Ga. 2010).

Most recently, the Sixth Circuit Court of Appeals in *Lindenberg v. Jackson National Life Insurance Company*, Case No. 17-6034/6079; 2018 WL 6712507 (6th Cir. 2018), held "that the punitive damages bar set forth in § 29-39-104 violates the individual's right to a trial by jury set forth in the Tennessee Constitution" and reversed the trial court's reduction of the three million dollar punitive damage award to the statutory limit.

All of the arguments made in defense of the punitive damage caps can be made in support of T.C.A. § 29-39-102. Further, the reasons why the general damages caps in T.C.A. § 29-39-102 offend the "inviolate" right to trial by jury are stronger and more persuasive.

> "The purpose of tort damages in Anglo-American law is to compensate the wronged party for damage or injury caused by the defendant's conduct. *See Inland container Corp. v. March*, 529 S.W.2d 43, 44 (Tenn. 1975); *Louisville, Nashville & Great southern R.R. v. Guinen*, 79 Tenn. 98, 103 (1883); *Ventress v. Tennessee Auto Corp.*, 5 Tenn. App. 140, 151 (1929). The goal of awarding damages is the repair the wronged party's injury or, at least, to make the wronged party whole as nearly as many be done by an award of money. *See* RESTATEMENT (SECOND) OF TORTS, § 901, cmt. A (1979); 4 Fowler V. Harper, et al., THE LAW OF TORTS, § 25.1 at 493 (2nd ed. 1986) ("Harper")." *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 703 (Tenn. 1999).

5

In contrast, the "purpose of a punitive award is to deter misconduct ..." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 902 (Tenn. 1992).

After having heard several days of testimony and reviewing the evidence, the jury in this case deliberated for several hours before rendering its verdict compensating Ms. McClay for the harm she suffered. In contrast to Tennessee legislation passed and signed into law, a limit on compensation necessarily deprives Ms. McClay's common law right to be made whole. The exercise of T.C.A. § 29-39-102 to reduce Ms. McClay's general damage verdict invades the "province of the jury" in direct violation of the guarantee of Article 1, § 6 of the Tennessee Constitution. The damages cap in T.C.A. § 29-39-102 is unconstitutional and should be recognized as null and void.

### 3) The General Damage Cap Violates the Separation of Powers Between the Legislature and the Judicial Branches

Article VI, § 1 of the Tennessee Constitution creates the judicial branch in which judicial power is exclusively vested. "The legislature has no power to interfere with the administration of justice ..." *See State v. Fleming*, 26 Tenn. 152, 146 WL 1515 at p. 2 (Tenn. 1946). Any attempt to exercise "powers properly belonging to the judicial branch by the legislative branch of government violates Article II, § 2 and Article VI, § 1 of the Constitution of Tennessee." *See Belmont v. Bd. of Law Examiners*, 551 S.W.2d 461, 464 (Tenn. 1974).

"'Judicial power' is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for a decision." *Morrow v. Corbin*, 122 Tex. 553, 558, 52 S.W.2d 641, 644 (1933), *cited with approval*, *State v. Mallard*, 40 S.W.3d 473, 483 (Tenn. 2001). The right to ask a court to

perform this function is itself fundamental.  Tenn. Const., Art. I, § 17[3], 23[4]; *Borough of Duryea, Pa. v. Guarnieri*, 564 US 379, 387, 131 S. Ct. 2488, 2494; 180 L. Ed. 2d 408 (2011), "the Petition Cause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes. '[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.'"

The damage caps imposed by T.C.A. § 29-39-102 violate these principles because the legislature is invading an exclusive judicial function in limiting damages by legislative fiat.  "Indeed, a 'court's constitutional function to independently decide controversies is impaired if it must depend on, or is limited by, another branch of government in determining and evaluating the facts of the controversies it must adjudicate.'" *State v. Mallard*, 40 S.W.3d 473 483 (Tenn. 2001)(quoting *Opinion of the Justices*, 141 N.H. 562, 688 A.2d 1006, 1016 (1997)).

T.C.A. § 29-39-102 constitutes legislation that encroaches upon a unique judicial function and is on this basis unconstitutional.

**4) The General Damages Cap Discriminates Disproportionately Against Women**

---

[3] Article I, Section 17:
That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay.  Suits may be brought against the state in such manner and in such courts as the Legislature may be law direct.

[4] Article I, Section 23:
That the citizens have a right, in a peaceable manner, to assemble together for their common good, to instruct their representatives, and to apply to those invested with the powers of government for redress of grievances, or other proper purposes, by address of remonstrance.

A remonstrance is a "petition to a court or deliberative or legislative body, in which those who have signed it request that something which is in contemplation to perform shall not be done."  BOVIER'S LAW DICTIONARY 2872 (8th ed. 1914).

"… The Court has stated in previous decision that Article I, § 8 and Article XI, § 8 of the Tennessee Constitution and the Fourteenth Amendment to the Constitution of the United States confer essentially the same protection upon the individuals subject to the those provisions." *Tennessee Small School Systems v. McWherter*, 851 S.W.2d 139, 152 (Tenn. 1993)(citations omitted).

Caps on noneconomic damages disproportionately affect claims asserted by women, the elderly and children. *See* Lucinda M. Finley, *The Hidden Victims of Tort Reform: Women, Children, and the Elderly*, 53 Emory Law Journal L.A.J. 1263 (2004).

Strict scrutiny is required when legislation burdens fundamental rights, such as the right to trial by jury or "operates to peculiar disadvantages of a 'suspect class (e.g., age or race).'" *See National Gas Distributors v. Sevier County Utility District*, 7 S.W.3d 41, 45 (Tenn. Ct. App. 1999).

The State of Florida struck down damage caps for lacking a rational basis. *N. Broward Hospital District v. Kalitan*, 219 So. 3d 49, 56-59 (Fla. 2017). A similar analysis applies to the caps imposed by T.C.A. § 29-39-102.

## Conclusion

The promulgation of T.C.A. § 29-39-102 which compels the imposition of a general damage cap on any jury's verdict that exceeds that arbitrary limit regardless of the facts and nature of the case, violates the guarantee of trial by jury, encroaches upon a unique judicial function and operates to harm women.

The Defendant's Motion should be denied.

Respectfully submitted,

By: s/Edmund J. Schmidt III
Edmund J. Schmidt III, TN Bar #021313
LAW OFFICE OF EDDIE SCHMIDT
2323 21st Avenue South, Suite 502
Nashville, Tennessee 37212
Phone (615) 678-6320
Fax (615) 454-6357
Email eddie@eschmidtlaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 18th day of January, 2019, a copy of the foregoing document was served upon the following via the courts electronic filing system:

Molly A. Glover, Esq.
130 North Court Avenue
Memphis, TN 38103
mglover@bpjlaw.com

Lauren L. Holloway
1299 Zurich Way, Suite 300
Schaumburg, IL 60196
lauren.holloway@zurichna.com

                                          s/Edmund J. Schmidt III
                                          Edmund J. Schmidt III